THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
 BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE
 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 James W. Williams, Appellant,
 
 
 v.
 Otis David Gould, Respondent.
 
 
 

Appeal from Colleton County
Benjamin Goldberg, Special Referee

Unpublished Opinion No. 2007-UP-316
 Submitted June 1, 2007  Filed June 14,
 2007    

AFFIRMED

 
 
 
 Ronnie L. Crosby, of Hampton, for Appellant.
 James D. Mosteller, III, of Barnwell and Robert J. Harte, of
 Aiken, for Respondent.
 
 
 

PER CURIAM: In this boundary dispute, James W. Williams appeals the special referees
 determination that Williams and Otis David Gould acquiesced to the boundary
 between their respective properties.  Williams argues on appeal that a dispute
 or uncertainty as to the actual boundary line is required to support a finding
 of acquiescence.  Because there is no such requirement under South Carolina
 law, we affirm.
I.
In
 1961, Raymond M. Gatch granted to G.M. Gould (Father) certain real property
 fronting the western bank of the Edisto River.  Father built a cabin on the
 eastern portion of this property.  In 1976, Father deeded the western portion
 to Dolphus and Betty G. Bridges.  Father retained the eastern portion (the
 Gould Property) until 1990, when he granted it to his son, Otis David Gould.  
In
 1970, Dorothy Hadley received the property directly south of the Gould
 Property.  In 1974, she deeded this tract to a church for which she acted as
 trustee.  In 1993, James Williams obtained this property and subdivided it into
 three tracts.[1] 
 Tract C (the Williams Property), containing 2.32 acres, now lies south of the
 Gould Property.[2]  
Sometime
 in the 1970s, Hadleys husband dug a canal on the northern portion of the
 Williams Property.  Several witnesses later testified the canal had been dug in
 the early 1970s, but the record contains a 1976 plat with only a proposed
 canal.  The 1976 plat shows the northern bank of the proposed canal as the
 border between the Williams and Gould Properties.[3]  
After the canal was finished, Father and Gould proceeded as if it
 marked the boundary between the Williams and Gould Properties.  For instance,
 Father and Gould built a fish cleaning table near the canal and installed a
 septic tank in this area.  Further, the cabin which Father and Gould used when
 they visited the property encroached into the area that is now in dispute.  Finally,
 Gould built a river wall up to the edge of the canal in 1992 or 1993.  Despite
 Father and Goulds continued use of the area in question, Williams
 predecessors-in-interest never complained.[4]
In
 1999, Williams filed an action against Gould claiming he owned property north
 of the canal upon which he asserted Gould had trespassed.  Gould denied these
 allegations and claimed his and Williams predecessors in title acquiesced to
 the northern bank of the canal as the border between the Gould and Williams
 Properties.  The circuit court held a bench trial, ruled in favor of Williams,
 and found no evidence supported Goulds acquiescence defense.  In Williams
 v. Gould, Op. No. 2003-UP-153 (S.C. Ct. App. filed Feb. 20, 2003), this
 court held the circuit court committed an error of law in ruling no evidence of
 acquiescence existed.  Accordingly, we remanded to the circuit court for
 reconsideration of the acquiescence of title question in light of this
 opinion.  
On
 remand, the case was heard by a special referee.  At trial, Buddy Gatch
 testified he witnessed Bill Hadley dig the canal between the Gould and Williams
 Properties.  Gatch explained Hadley surveyed his northern boundary to find out
 where his line went so he would know where to start his canal, I would assume.
  According to Gatch, the neighbors and Hadley agreed where to place the line. 
 Hadley thus placed a marker on a spot six or eight feet from the edge of the
 canal.  The referee found Gould met his burden of proving boundary by
 acquiescence.  After the referee denied Williams reconsideration motion, this
 appeal followed.  
II.
A
 boundary dispute, if it encompasses an issue of title, is an action at law.  Knox
 v. Bogan, 322 S.C. 64, 66, 472 S.E.2d 43, 45 (Ct. App. 1996).  In an
 action at law, tried without a jury, the judges factual findings will not be
 disturbed unless found to be without evidence which reasonably supports them.  Bodiford
 v. Spanish Oak Farms, Inc., 317 S.C. 539, 544, 455 S.E.2d 194,
 197 (Ct. App. 1995).
III.
 Williams
 contends the referee committed an error of law in finding a boundary by
 acquiescence because uncertainty or dispute as to the actual boundary line is
 required to support such a finding.  We disagree.  
The common law doctrine of acquiescence occurs when adjacent
 landowners mutually recognize and accept a clear line as the boundary between
 their properties for a long period of time.  See 9 Powell on
 Real Property § 68.05(2) (2000); see
 also Croft v. Sanders, 283 S.C. 507, 509, 323 S.E.2d 791, 792 (Ct. App. 1984) (A
 boundary line may be determined by mutual recognition of and acquiescence in a
 particular line.)  It is well established that if landowners occupy their
 respective premises up to a certain line which they mutually recognize and
 acquiesce in for a long period of time . . . they are precluded from claiming
 that the boundary line thus recognized and acquiesced in is not the true one.  Klapman v. Hook, 206 S.C. 51, 57, 32 S.E.2d 882, 884
 (1945).  When a boundary line is
 acquiesced to by adjoining landowners, the acquiescence is binding on the
 parties and their successors in interest.  12 Am. Jur. 2d Boundaries §
 83 (1997).
The essence of Williams appeal is the claim that the doctrine of
 acquiescence requires a showing of a dispute or uncertainty as to the true
 property line.  The law, however, imposes no such requirement.  Evidence of a
 dispute or uncertainty is not required in a case, such as this one, in which
 acquiescence is established by the actions of adjoining landowners occupying
 their respective properties up to a certain line over a long period of time.[5]  In Knox v. Bogan, 322 S.C.
 64, 73, 472 S.E.2d 43, 49 (Ct. App. 1996), this court explained:

 [W]here, as here, there has been a recognition by adjoining
 property owners of a clearly defined line for a long period of time, there is
 no requirement under South Carolina law that the plaintiff show an active
 dispute or uncertainty as to the true line and a settlement of that dispute or
 uncertainty by the parties as an element of proof of title by acquiescence.

Based on this precedent, we hold the referee did not commit an
 error of law in finding the parties acquiesced to the northern edge of the
 canal as the boundary between the Gould and Williams Properties.  
We find Williams remaining arguments manifestly without merit.  Accordingly, we dispose of
 them pursuant to Rule 220(b)(2), SCACR.  
IV.
Evidence
 supports the referees finding that Gould established the affirmative defense
 of acquiescence of title.  The judgment of the special referee is
AFFIRMED.

HEARN, C.J., KITTREDGE, J. and CURETON, A.J., concur.

[1]  Although this property was actually deeded to
 Williams Farms Partnerships, Gould failed to object to Williams proceeding as
 the real party in interest.  
[2]  Later, Williams further subdivided Tract C.  
[3]    However, Gene Whetsell, a registered land surveyor, testified 35 to
 40 feet of riverfront property to the north of the canal belonged to the Williams Property.  Whetsell based
 his conclusion on recorded deeds and plats in both Williams and Goulds chain
 of title.  
[4] The only evidence to the contrary is the
 testimony of Roy Walker, who owned the Williams Property in 1982.  He attempted
 to access the cabin because it was partially within the property description in
 his deed.  He testified somebody put me out of it because it was not my
 building.  
[5] We note that even if a dispute or uncertainty were required, that
 requirement is met here under our deferential scope of review.  Portions of
 Goulds testimony reflect some uncertainty about the true boundary line.  In
 addition, both Gatchs testimony and the 1976 plat support inferences that
 Hadley did not know where the true boundary line was located.